UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DARRYL J.,[1] *Plaintiff*, v. LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] *Defendant*. | 3:23-cv-1563 (SVN) March 31, 2025 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff was not entitled to Supplemental Security Income ("SSI") because he was not disabled during the relevant period between January 20, 2021, and February 28, 2022. Plaintiff appeals the Social Security Commissioner's denial of benefits, arguing that the ALJ erred by substituting their own opinion for that of medical experts and by not making a more restrictive Residual Functioning Capacity ("RFC") finding. The Commissioner moves for affirmance of the ALJ's decision. For the reasons described below, Plaintiff's motion to reverse, or in the alternative, remand is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner is GRANTED.

I. **BACKGROUND**

The Court assumes the parties' familiarity with Plaintiff's medical history, as summarized in his statement of facts, ECF No. 19-1, which the Court adopts and incorporates by reference.

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interest of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] The current Acting Commissioner of the Social Security Administration is Leland Dudek. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Leland Dudek for Martin O'Malley in this action, and to designate that he is the Acting Commissioner.

The Court also assumes familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II. LEGAL STANDARD

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d

---

[3] Citations to the administrative record, ECF No. 13, appear as "Tr." followed by the page number appearing in the bottom right-hand corner of the record.

Cir. 2012). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

### III.  DISCUSSION

Plaintiff raises two issues in his motion. First, he argues that the ALJ improperly substituted their own layperson opinion for that of the medical experts. Second, he argues that the ALJ should have made a more restrictive RFC finding, and that the ALJ's RFC determination is not supported by substantial evidence in the record. For the reasons below, the Court disagrees with Plaintiff on both points.

#### A.  The ALJ Properly Evaluated the Medical Opinions

The Court begins with Plaintiff's argument that the ALJ weighed the medical opinions of record outside of the regulations and substituted those opinions with the ALJ's layperson opinion.

An RFC finding is "administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order); *see also* 20 C.F.R. § 416.920c. In making this determination, the ALJ must consider all relevant medical and other evidence. *See Curry*, 855 F. App'x at 48 n.3; 20 C.F.R. § 416.945(a)(3). Moreover, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the [Commissioner], and not this court, to weigh the conflicting evidence in the record."); *Henderson v. O'Malley*, No. 23-712-cv, 2024 WL 1270768, at *2 (2d Cir. Mar. 26, 2024) (summary order). As a result, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

An ALJ need not defer or give any special weight to any particular medical opinion. 20 C.F.R. § 416.920c(a). Instead, an ALJ is charged with evaluating a number of factors in

3

determining the weight to give an opinion, the most important of which are the opinion's consistency and the opinion's supportability. *Id.* § 416.920c(b). In terms of supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Here, the ALJ, in determining Plaintiff's RFC, found that Plaintiff could perform light work with the following limitations: he could frequently balance, kneel, and crouch; could occasionally stoop, crawl, or climb ramps and stairs; could not climb ladders, ropes, or scaffolds; and could not work at unprotected heights or with dangerous moving machinery. Tr. at 16. In reaching this conclusion, the ALJ found the opinions by state agency medical consultants partially persuasive, the assessments by state agency mental health consultants persuasive, and the consultative examination opinions of Dr. Adrian Klufas and Dr. Liese Franklin-Zitzkat minimally persuasive. *See id.* at 15, 20–21. Plaintiff challenges the ALJ's treatment of the opinions of the state agency medical consultants, focusing on the ALJ's "minimiz[ation]" of these medical opinions. Pl.'s Br., ECF No. 19-1 at 16–20. The Court finds the ALJ properly considered the opinions under the relevant regulations.

4

### *1. Opinions on Plaintiff's Physical Functioning*

Beginning with Plaintiff's physical functioning, the Court finds that the ALJ did not err in finding the assessments of the state agency medical consultants partially persuasive and Dr. Klufas' opinion minimally persuasive.

On initial review in July of 2021, Dr. Gary Tickey found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; could stand and walk for up to six hours during each eight-hour workday; could frequently balance, kneel, and crouch; could occasionally climb ramps and stairs, stoop, and crawl; could never climb ladders, ropes, and scaffolds; and should avoid all heights and hazards. *See* Tr. at 78–79. He additionally determined that Plaintiff may use a cane when walking on uneven surfaces or with prolonged ambulation. *Id.* at 79. When Dr. Paul Gormley reviewed the record in February of 2022 after Plaintiff sought reconsideration, he made the same findings as Dr. Tickey, except that Plaintiff could occasionally, rather than frequently, crouch. *Id.* at 89–90.

The ALJ's conclusion that these opinions were partially supported by and partially consistent with the medical evidence in the record was not erroneous. The ALJ correctly noted that nothing in the treatment record, nor Dr. Klufas' examination, supported Plaintiff's use of a cane to walk on uneven surfaces or with prolonged ambulation. *See id.* at 20. There is no mention of a cane or other assistive device in the record, *id.*, Plaintiff self-reported in February of 2021 that he did not use any assistive device to move around, *id.* at 286, and Dr. Tickey's finding that Plaintiff "was noted to use cane with fairly normal gait" during his consultative examination with Dr. Klufas directly conflicts with both his own observation that "in the [Activities of Daily Living] there is no mention of cane and per claimant can[] walk 1 mile before needed to rest," *id.* at 80, and Dr. Klufas' observation that Plaintiff "walks without an assistive device with a fairly normal gait," *id.*

5

at 637.  Plaintiff's claim that his hearing testimony suggests the use of a cane is unsupported; at no time did Plaintiff ever report during his hearing or his medical treatment appointments that he needed to use a cane, nor does Plaintiff provide a direct quotation from the hearing transcript or the record to support this assertion.  Pl.'s Br. at 18; Def.'s Br., ECF No. 27-1 at 9; *see also* Tr. at 49–53 (Plaintiff describing his physical limitations during the hearing, without mentioning the use of an assistive device).  Aside from that inconsistency, however, the ALJ found the remaining restrictions in Dr. Tickey and Dr. Gormley's RFC assessments to be consistent with the record.  *See* Tr. at 20.  Thus, while Plaintiff argues that the ALJ impermissibly supplanted their lay opinion for those of trained medical professionals, the Court concludes that the ALJ properly evaluated the consistency and supportability of the state agency medical consultants' assessments in light of other evidence in the record.

Next, the Court finds that the ALJ did not improperly weigh Dr. Klufas' opinion, which they had found less persuasive than those of the state agency medical consultants.  The ALJ properly analyzed the supportability of Dr. Klufas' findings.  Dr. Klufas found that Plaintiff had a "[l]imited tolerance for sitting, standing, or walking."  *Id.* at 637.  The ALJ noted that this conclusion was based on Plaintiff's self-reporting and was at odds with Dr. Klufas' own examination findings.  *Id.* at 20.  Specifically, the ALJ pointed out that, although Dr. Klufas did find limited spinal flexion, back tenderness, and a positive straight leg raise test on the right, he also observed that Plaintiff was able to get on and off the examination table without assistance, could do toe and heel walking for several steps, and had no sensory deficits.  *Id.* (citing *id.* at 637).  The ALJ's evaluation of "the objective medical evidence and supporting explanations" presented by Dr. Klufas, then, was reasonable and was performed as required by regulation.  *See* 20 C.F.R. § 416.920c(c)(1).

Moreover, the ALJ found that the limitations recognized by Dr. Klufas were inconsistent with treatment notes and Plaintiff's other subjective reports. For example, treatment records during the relevant period show that Plaintiff had tenderness in the thoracic, lumbar, and sacral spine, but scored 5/5 in muscle strength and had no limitation on range of motion or numbness. *See* Tr. at 788, 791.[4] At these visits, the treatment providers noted that imaging did not warrant any other narcotic pain medication. *Id.* at 789, 791. Further, notes from a pain management telehealth appointment on January 10, 2022, show that Plaintiff reported he was able to cook and do light housework, *id.* at 784, and a behavioral health evaluation from January 4, 2021, indicates Plaintiff reported he had moderate difficulty standing for long periods but had mild difficulty with taking care of household responsibilities, *id.* at 806. Plaintiff stated that he was stable with daily activities, could prepare food for himself and perform light housework, had moderate difficulty standing for more than thirty minutes, and had only mild difficulty with completing household tasks. *Id.* at 20.

Accordingly, the Court finds no error in the ALJ's consideration of Dr. Tickey, Dr. Gormley, and Dr. Klufas' assessments of Plaintiff's physical limitations.

    2. *Opinions on Plaintiff's Mental Functioning*

The Court concludes that the ALJ properly weighed Dr. Franklin-Zitzkat's opinion by analyzing both the supportability and consistency of Dr. Franklin-Zitzkat's findings in light of other evidence on the record. The ALJ found Dr. Franklin-Zitzkat's assessment minimally persuasive. Dr. Franklin-Zitzkat determined that Plaintiff would likely have mild difficulty attending to instructions; marked difficulty remembering instructions and with complex tasks;

---

[4] While Plaintiff suggests that it is not inconsistent for a person with back pain to have normal muscle strength because back pain is not typically muscular in nature, Pl.'s Br. at 16, the Court cannot find that the ALJ's conclusion assessment of Dr. Klufas' opinion was flawed, for the reasons discussed above.

might not always follow through on decisions; and depression and/or anxiety might interfere with his ability to maintain consistent attendance. *Id.* at 759. As with Dr. Klufas' assessment, the ALJ found Dr. Franklin-Zitzkat's conclusion to be at odds with her own examination findings. While Dr. Franklin-Zitzkat reported that Plaintiff had difficulty with digit span tasks and mathematical calculations, as well as delayed recall (which the ALJ acknowledged), Plaintiff was also noted to be alert and fully oriented, had a "logical and goal-directed" thought process, was able to perform simple mathematical calculations, and had "generally unimpaired" long-term memory. *Id.* at 757–58; *id.* at 20.

In addition, the ALJ properly found Dr. Franklin-Zitzkat's opinion less persuasive because it was inconsistent with other medical evidence in the record. The ALJ recognized that one treatment note from early 2019 indicated that Plaintiff's memory was "inconsistent and erratic," *see id.* at 21 (citing *id.* at 512), but cited to numerous other portions of Plaintiff's treatment record where Plaintiff was found to have no memory impairment or intact memory, *id.* at 21 (citing *id.* at 353, 397, 597, 626, 812, 819, 893). The ALJ also cited medical records showing that Plaintiff responded well to treatment, successfully completed cognitive behavioral therapy, and managed his depression symptoms with medications. *Id.* at 21 (citing *id.* at 598, 820, 831, 832, 857–58). Plaintiff claims that the ALJ's consistency analysis was incorrect because he has a "long history of abnormal psychiatric and psychological findings," but the treatment note that he cites to prove that his memory has always been "inconsistent and erratic" is the exact same treatment note that the ALJ already acknowledged. *Compare* Pl.'s Br. at 17 (citing Tr. at 512) *with* Tr. at 21 (citing Tr. at 512). The other evidence that he highlights—poor anger management and conflicting internal voices—are not relevant to Plaintiff's memory and thus do not refute the ALJ's analysis of the consistency of Dr. Franklin-Zitzkat's assessment. This comparison of Dr. Franklin-Zitzkat's

8

findings with other portions of the record, therefore, satisfied the ALJ's obligations. *See* 20 C.F.R. § 416.920c(c)(2). Thus, the ALJ did not impermissibly substitute their opinion for that of Dr. Franklin-Zitzkat.

### B. The ALJ's Opinion is Otherwise Supported by Substantial Evidence

The Court also finds that the ALJ's broader RFC analysis and ultimate finding that Plaintiff could perform light work with certain restrictions is supported by substantial evidence. Plaintiff argues that he should have been limited to "sedentary exertion with a sit/stand/walk option," and "unskilled work, with no public contact, and occasional off-task behavior." Pl.'s Br. at 20, 21.

The ALJ's decision to limit Plaintiff to only light work with additional limitations, rather than sedentary work, is supported by substantial evidence. Plaintiff argues that his back pain was aggravated, during the relevant time, by standing, sitting, and walking, and that his physical limitations included getting dressed, walking, standing, and sitting. *Id.* at 21. As the ALJ thoroughly details, Plaintiff's statements regarding the intensity, persistence, and limiting effects of his back pain are inconsistent with the objective medical evidence and even his own statements on the record. *See* Tr. at 17–19. The ALJ correctly noted that the record reflects little to no treatment for back pain until November 30, 2021, which is eleven months after Plaintiff's amended alleged onset date of January 20, 2021. *Id.* at 18 (citing *id.* at 648). Plaintiff had an MRI in February of 2020, which showed degenerative disc disease. *Id.* (citing *id.* at 643). In March of 2020, Plaintiff was referred to an orthopedic clinic and received a transforaminal epidural steroid injection for back pain relief. *Id.* at 530, 537. But it appears that Plaintiff never followed up on his back condition until his follow-up MRI on October 22, 2021, which showed an L3-L4 disc protrusion appearing "slightly larger" than the prior examination, as well as disc degeneration at L4-L5 similar to the prior examination. *Id.* at 18 (citing *id.* at 766).

Second, Plaintiff's subjective statements in the record reflect that he was able to perform a range of daily activities despite his impairments. The ALJ noted, for example, that Plaintiff indicated moderate difficulty with standing for long periods but mild difficulty with taking care of household responsibilities in January of 2021, *id.* at 20 (citing *id.* at 806); Plaintiff reported in January and February of 2021 that he was seeking employment, *id.* at 19 (citing *id.* at 594, 793, 846); and Plaintiff stated that he was able to perform light chores and cook in January of 2022 and continued to be stable with daily activities in March of 2022, *id.* (citing *id.* at 781, 784). Plaintiff also self-reported in February of 2021 that he could walk a mile before needing to stop and rest and prepared his own meals, performed light cleaning, went shopping, and handled money. *Id.* (citing *id.* at 280–87). He even indicated in November and December of 2021 that one of his hobbies was "working out." *Id.* at 787, 790. Thus, Plaintiff has not satisfied his burden of establishing a more restrictive RFC, as he fails to point to any objective medical findings or opinions, aside from self-reporting to providers, to assert that greater limitations are warranted. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (*per curiam*) (finding that the plaintiff's ability to perform daily activities and chores showed that his allegations of disabling limitations were not fully credible).

Next, Plaintiff argues that the ALJ did not account for Plaintiff's long history of mental illness, and should have limited him to unskilled work, with no public contact, and occasional off-task behavior. *See* Pl.'s Br. at 21. This argument misses the mark, as the ALJ indeed factored Plaintiff's mental health history into the RFC analysis. *See* Tr. at 13–15, 20–21. The ALJ determined that Plaintiff has mild limitations in all four broad functional areas of mental functioning set out in the disability regulations based on behavioral health treatment notes from 2014 to 2022, Dr. Franklin-Zitzkat's mental examination, and the state agency psychologist

consultants' assessments. *Id.* at 14–15. Although Plaintiff has a history of anger and "bad choices," *see, e.g., id.* at 351, 357, 369, 371, 846–47, Plaintiff was noted to be cooperative, polite, and participated in discussions during his telehealth therapy groups, *id.* at 843, 846, 848, 851; Dr. Franklin-Zitzkat reported that Plaintiff was cooperative and polite during his mental examination, *id.* at 757; and Plaintiff self-reported that he socialized daily either in person or by phone, tried going outside every day, got along "very well" with authority figures, was never terminated from a job due to interpersonal issues, and denied difficulty getting along with others, *id.* at 283–85. Dr. Robert Decarli, a state agency psychological consultant who reviewed Plaintiff's mental health record on reconsideration and had the opportunity to review Dr. Franklin-Zitzkat's examination findings, determined that Plaintiff was compliant with treatment and had no significant functional limitations. *Id.* at 88. Plaintiff was able to complete his function report without assistance. *Id.* at 19; *id.* at 287 (function report reflecting that Plaintiff was the individual who completed the form). Moreover, as explained above, the ALJ properly determined that many of Dr. Franklin-Zitzkat's conclusions were not supported and were inconsistent with her own examination findings and other medical evidence in the record.

      As a result, the ALJ's RFC finding that Plaintiff can perform light work with certain physical restrictions is supported by substantial evidence.

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion is DENIED and Defendant's motion is GRANTED. The Clerk is directed to substitute Leland Dudek for Martin O'Malley in this action, and then enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2025.

                                            */s/ Sarala V. Nagala*
                                            SARALA V. NAGALA
                                            UNITED STATES DISTRICT JUDGE